Filed 6/18/26  P. v. Doby CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B339607 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA081778) |
| v. | |
| RANDY DOBY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura L. Laesecke, Judge.  Affirmed.

Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne and Jonathan M. Krauss, Deputy Attorneys General, for Defendant and Respondent.

## INTRODUCTION

Randy Doby appeals the superior court's denial of his Penal Code section 1172.6 petition at the prima facie stage without issuing an order to show cause.[1]  Doby argues the superior court erred because certain jury instructions at his trial allowed him to be convicted of murder and attempted murder on a theory of imputed malice.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Conviction and Sentence*

In 2009, Doby and codefendant Trindel Wingate were charged with the murder of James Franklin (§ 187, subd. (a)) and the attempted murder of D'ancee Carter (§§ 187, subd. (a), 664).  The information alleged the attempted murder of Carter was committed willfully, deliberately, and with premeditation (§ 664, subd. (a)).  The information also alleged various firearm (§ 12022.53) and gang (§ 186.22) enhancements.

Doby and Wingate were tried together.  At trial, the jury heard evidence that Franklin and Carter were shot after Doby and Wingate passed by them on the street.[2]  The prosecution did

---

[1]    Undesignated statutory references are to the Penal Code.

[2]    We provide factual context from the prior appellate opinion affirming Doby's convictions on direct appeal.  (See *People v. Doby* (Mar. 27, 2013, B233832) [nonpub. opn.].)  "These facts are 'for background purposes and to provide context for the parties'

not introduce any direct evidence regarding who shot Franklin and Carter. The People's theory at trial was that Wingate and Doby both acted as principals to the offenses, regardless of the identity of the shooter or shooters.

The jury was instructed on willful and premeditated first degree murder. The jury was also instructed that second degree murder is "the unlawful killing of a human being with malice aforethought when the perpetrator intended unlawfully to kill a human being but the evidence is insufficient to prove deliberation and premeditation." Additionally, on the murder charge the jury was instructed with CALJIC No. 3.00:

> Persons who are involved in committing or attempting to commit a crime are referred to as principals in that crime. Each principal, regardless of the extent or manner of participation is equally guilty. Principals include:
> 1. Those who directly and actively commit or attempt to commit the act constituting the crime, or
> 2. Those who aid and abet the commission or attempted commission of the crime.
> When the crime charged is either murder or attempted murder, the aider and abettor's guilt is determined by the combined acts of all the participants as well as that person[']s own mental state. If the aider and abettor's mental state is more culpable than that of the actual perpetrator, that

---

arguments.' [Citation.] We do not rely on these facts to review the trial court's determination for [Doby's] prima facie showing." (*People v. Rushing* (2025) 109 Cal.App.5th 1025, 1028, fn. 2.)

person's guilt may be greater than that of the actual perpetrator. Similarly, the aider and abettor's guilt may be less than the perpetrator's, if the aider and abettor has a less culpable mental state.

The jury also received CALJIC No. 3.01 on aiding and abetting:

A person aids and abets the commission or attempted commission of a crime when he:
(1)  With knowledge of the unlawful purpose of the perpetrator, and
(2)  With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and
(3)  By act or advice, aids, promotes, encourages or instigates the commission of the crime. . .

The jury was also instructed with CALJIC No. 8.66 on attempted murder: "1. A direct but ineffectual act was done by one person towards killing another human being; and 2. The person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being." As relevant to the attempted murder charge, the jury received CALJIC No. 8.66.1 on the "kill zone" theory:

A person who primarily intends to kill one person, may also concurrently intend to kill other persons within a particular zone of risk. This zone of risk is termed the "kill zone." The intent is concurrent when

4

the nature and scope of the attack, while directed at a primary victim, are such that it is reasonable to infer the perpetrator intended to kill the primary victim by killing everyone in that victim's vicinity.

The jury found Doby guilty of second degree murder and attempted murder, but it found the attempted murder was not willful, deliberate, and premeditated.  The jury further found the firearm and gang enhancement allegations to be true.  Doby was sentenced to a total prison term of 74 years to life, consisting of 15 years to life for second degree murder, plus nine years for attempted murder, and two terms of 25 years to life on the firearm enhancements.

On direct appeal, this court reversed Doby's firearm and gang enhancements due to insufficient evidence and otherwise affirmed the judgment.  (*People v. Doby* (Mar. 27, 2013, B233832) [nonpub. opn.].)  Doby was resentenced to 15 years to life for second degree murder, plus nine years for attempted murder.

B.    *Section 1172.6 Resentencing Petition*

In 2023, Doby filed a petition in propria persona for resentencing under then-section 1170.95, now renumbered section 1172.6.  Doby alleged he was convicted of first or second degree murder and he could not now be convicted because of changes to the Penal Code made by Senate Bill No. 1437.

The People opposed Doby's petition, arguing the jury was not instructed on the felony murder rule or the natural and probable consequences doctrine, thus Doby "could only be convicted as the actual perpetrator or a direct aider and abettor."

Doby filed a reply through appointed counsel.  Doby argued that "the prosecution fails to recognize that Senate Bill 775 [] broadened the scope of Penal Code section 1172.6 petitions to include murder and attempted murder convictions based on '. . . [any] other theory under which malice is imputed to a person based solely on that person's participation in a crime.' " (Italics and emphasis omitted.)  Doby cited *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*) which concluded that the "standard aiding-and-abetting instruction," CALJIC No. 3.01, was "inadequate as applied to the crime of second degree murder because it did not clarify that an accomplice must personally harbor th[e] mental state of implied malice." (*Langi*, at p. 983.)  Doby argued that, as in *Langi*, CALJIC No. 3.01 "permitted the jury to impute malice to [him] based solely on his participation in a crime . . . and should have been tailored to explain that to be guilty as a direct aider and abettor of murder and attempted murder, an accomplice must have acted with malice."

Doby further argued that the jury instruction on the "kill zone" theory, CALJIC No. 8.66.1, was now erroneous under *People v. Canizales* (2019) 7 Cal.5th 591.  This error, Doby asserted, "failed to require that the jury find that Mr. Doby had the specific intent to kill the victim" as required for attempted murder, and it "allowed [the] jury to impute the express malice required for attempted murder based on his presence and participation in the crime."

The superior court held a prima facie review hearing in July 2024.  The court stated it was denying Doby's petition because his second degree murder conviction "was not [on] a natural and probable consequence theory and it was not [on] a felony murder theory."  The court further denied the petition as

6

to the attempted murder conviction, concluding attempted murder was eligible for section 1172.6 relief only "under the natural and probable consequences" and not an "other theory under which malice is imputed."

Doby timely appealed.

## DISCUSSION

A.    *Governing Law and Standard of Review*

In 2018, Senate Bill No. 1437 (2017-2018 Reg. Sess.) "amended section 188 to provide that, except in cases of felony murder, 'in order to be convicted of murder, a principal in a crime shall act with malice aforethought.' [Citation.] This change 'bars a conviction for first or second degree murder under a natural and probable consequences theory.' " (*People v. Reyes* (2023) 14 Cal.5th 981, 986.) Senate Bill No. 1437 further amended the felony murder rule (section 189) to impose murder liability only on actual killers, those who aid or abet the actual killer with the intent to kill, and major participants in the underlying felony who act with reckless indifference to human life. (See *People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*).)

Senate Bill No. 1437 also created former section 1170.95, now section 1172.6, to provide "a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended." (*Strong, supra*, 13 Cal.5th at p. 708, fn. 2.) "[T]he section 1172.6 petitioning 'process begins with the filing of a petition containing a declaration that all requirements for eligibility are met ([§ 1172.6], subd. (b)(1)(A)), including that "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to . . . Section 188

7

or 189. . . .' " [Citations.] Upon receiving a complying petition, and after affording the parties an opportunity to submit briefing, 'the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. . . .' (§ 1172.6, subd. (c).)." (*People v. Antonelli* (2025) 17 Cal.5th 719, 724 (*Antonelli*).)

To assess whether the petitioner has made a prima facie showing, the court may consult the record of conviction to "inform" its prima facie inquiry. (*People v. Lewis* (2021) 11 Cal.5th 952, 971-972 (*Lewis*).) Whether a petitioner is eligible for relief " 'will turn on an examination of both the governing law at the time of trial and the record of conviction, including the jury instructions.' " (*Antonelli, supra*, 17 Cal.5th at p. 731 [jury instructions are "critical" for "assessing section 1172.6 petitions from individuals convicted following jury trials"].)

Further, the court should " ' "take[] petitioner's factual allegations as true and make[] a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. . . ." ' '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis, supra*, 11 Cal.5th at p. 971.) "In reviewing any part of the record of conviction" at the prima facie stage, "a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at p. 972.) "[T]he prima facie inquiry . . . is limited" and "the 'prima facie bar was intentionally and correctly set very low.' "

8

(*Id.* at pp. 971-972.) "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.] If, instead, the defendant has made a prima facie showing of entitlement to relief, 'the court shall issue an order to show cause.' " (*Strong*, *supra*, 13 Cal.5th at p. 708.)

In 2021, Senate Bill No. 775 expanded the availability of section 1172.6 resentencing relief beyond those convicted of first or second degree murder under the natural and probable consequences doctrine or felony murder rule. (See *Antonelli*, *supra*, 17 Cal.5th at p. 721.) Section 1172.6 as amended now makes eligible for resentencing defendants convicted of murder under a "theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter." (§ 1172.6, subd. (a).)

"We independently review the trial court's determination that the petitioner failed to make a prima facie showing for relief." (*People v. Pickett* (2023) 93 Cal.App.5th 982, 989; accord, *People v. Gaillard* (2024) 99 Cal.App.5th 1206, 1211.) "[W]e review the trial court's ruling, 'not the court's reasoning and, if the ruling was correct on any ground, we affirm.' " (*People v. Camacho* (2022) 14 Cal.5th 77, 123.)

We interpret section 1172.6 de novo. (*Garcia v. Superior Court* (2024) 106 Cal.App.5th 1005, 1015; accord, *People v. Curiel* (2023) 15 Cal.5th 433, 461.) " ' " ' " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning.' " ' " [Citation.]

9

" '[W]e look to "the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]" [Citation.] That is, we construe the words in question " 'in context, keeping in mind the nature and obvious purpose of the statute.' " ' " ' " (*Curiel*, at p. 461.)

B. *The Superior Court Did Not Err by Denying Doby's Petition at the Prima Facie Stage*

1. *The Jury Instructions on Second Degree Murder Did Not Create a Possibility of Conviction on an Imputed Malice Theory*

Relying on *Langi*, Doby first argues that the jury instructions on aiding and abetting allowed the jury to convict him of second degree murder on a theory of imputed malice. As stated, *Langi* concluded a section 1172.6 petitioner established a prima facie showing because the standard aiding and abetting instruction in CALJIC 3.01 may have permitted a jury to convict him of second degree murder on a theory of imputed malice.[3]

---

[3] The People contend that *Langi* was "wrongly decided and should not be followed," citing *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, *People v. Flores* (2023) 96 Cal.App.5th 1164, and *People v. Burns* (2023) 95 Cal.App.5th 862, which held that section 1172.6 petitioners may not assert " 'a routine claim of instructional error' that 'could have been asserted on appeal from the judgment of conviction.' " (*Berry-Vierwinden*, at p. 936.)

In *People v. Lopez* (2026) 19 Cal.5th 639 at page 658 (*Lopez*), our Supreme Court "disapprove[d] the *Burns-Flores/Berry-Vierwinden* line of cases" and held that " '[t]he mere fact that a petitioner could have raised an analogous . . . claim of instructional error at trial or in his original appeal does not

10

(*Langi*, *supra*, 73 Cal.App.5th at pp. 983-984; see also *People v. Maldonado* (2023) 87 Cal.App.5th 1257, 1265-1266 (*Maldonado*) [concluding an aiding and abetting instruction substantively " 'identical' " to that in *Langi* may have allowed the jury to convict a section 1172.6 petitioner of implied malice lying-in-wait murder on an imputed malice theory].)  Doby contends that "[n]othing in the standard aiding and abetting instruction given to the jury here stated that as an aider and abettor, [Doby] must have acted with the same mental state as the perpetrator."  Doby argues that "the 'equally guilty' language of CALJIC 3.00 further obscured the distinction" between guilt as a direct perpetrator and guilt as an aider and abettor.  (See *Langi*, at p. 981, fn. 8 [noting CALJIC No. 3.00 " 'equally guilty' " instruction].)

*Langi*, however, does not support Doby.  First, Doby's jury received an amended version of CALJIC No. 3.00 regarding principals to a crime.  This instruction, while describing principals to a crime as "equally guilty," clarified that "[w]hen the crime charged is either murder or attempted murder, the aider and abettor's guilt is determined by the combined acts of all the participants as well as that person[']s own mental state."  In *Langi*, by contrast, the jury received the unamended CALJIC No. 3.00, meaning that "nothing in the standard aiding-and-abetting instruction given . . . state[d] that the accomplice himself must have acted" with the required mental state.  (*Langi*, *supra*, 73 Cal.App.5th at p. 983 & fn. 13.)

_____

render him categorically ineligible for relief under section 1172.6.' "  (*Ibid.*)  We requested and received supplemental briefing regarding *Lopez*'s impact, if any, on Doby's appeal.  (See Gov. Code, § 68081.)

11

To be sure, the jury in *Langi* received the same aiding and abetting instruction (CALJIC No. 3.01) that Doby's jury received. Specifically, the jury was instructed that an aider and abettor must act with "knowledge of the unlawful purpose of the perpetrator" and with "the intent or purpose of committing or encouraging or facilitating the commission of the crime." (*Langi*, *supra*, 73 Cal.App.5th at p. 981.)

But in *Langi*, the jury was also instructed on second degree implied malice murder: "a killing is a second degree murder if '1. The killing resulted from an intentional act, [] 2. The natural consequences of the act are dangerous to human life, and [] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life. [] When the killing is the direct result of such an act, it is not necessary to prove that the defendant intended that the act would result in the death of a human being.' " (*Langi*, *supra*, 73 Cal.App.5th at p. 981.) The Court of Appeal agreed with the petitioner that "under the instructions that were given, the jury was entitled to conclude that, to be guilty as an aider and abettor of second degree murder, [Langi] need only have intended to encourage the perpetrator's intentional act—in this case, punching [the victim]—whether or not [Langi] intended to aid or encourage [the victim's] killing, and whether or not he personally knew of and disregarded the risk of such a killing. [¶] The instructions should have explained that, to be guilty as a direct aider and abettor of second degree murder, an accomplice must have acted with the mental state of implied malice." (*Id.* at p. 983; see also *Maldonado*, *supra*, 87 Cal.App.5th at p. 1266 [following *Langi* and concluding that if the jury "found the perpetrator's *purpose* was only to injure or intimidate the victim in a surprise attack,"

12

the jury may have convicted petitioner of aiding and abetting lying in wait first degree murder by finding petitioner intended to encourage this intentional act, not the actual killing].)

By contrast, Doby's jury was not instructed on second degree implied malice murder. Rather, the only definition of second degree murder the jury considered at Doby's trial was based on express malice, which required the People to prove that "the perpetrator intended unlawfully to kill a human being." *Langi*'s reasoning only applies where "the second degree murder instruction specifie[s] that the direct perpetrator of that crime need not act with the unlawful intent of causing death," but instead with implied malice. (*Langi*, *supra*, 73 Cal.App.5th at p. 982; see *id.* at pp. 982-983 [CALJIC No. 3.01 is "inadequate" where "it d[oes] not clarify that an accomplice must personally harbor [a] mental state of implied malice"]; see *Maldonado*, *supra*, 87 Cal.App.5th at p. 1267 [adopting *Langi*'s reasoning because "first degree lying-in-wait murder can be based on a theory that the perpetrator acted with implied malice rather than an intent to kill"].)

In Doby's case, where the direct perpetrator's liability for second degree murder was premised on intent to kill, not implied malice, CALJIC No. 3.01 correctly instructed the jury that an aider and abettor to the crimes must share the perpetrator's "unlawful purpose," i.e., his intent to kill. (See *People v. McCoy* (2001) 25 Cal.4th 1111, 1122-1123 [holding that where the jury found an aider and abettor "knew of [the perpetrator's] unlawful purpose and intended to commit, encourage, or facilitate that purpose" and "[t]he only unlawful purpose charged [at trial] was an unlawful killing," "one cannot knowingly and intentionally help another commit an unlawful killing without acting with

13

malice"].)  Indeed, direct aiding and abetting liability for murder remains a valid theory after Senate Bill Nos. 1437 and 775 " 'because a direct aider and abettor to murder must possess malice aforethought.' "  (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1252; accord, *People v. Estrada* (2022) 77 Cal.App.5th 941, 945.)

Because Doby was convicted either as a direct perpetrator of, or as a direct aider and abettor to, an express malice murder, Doby does not demonstrate a possibility that the jury convicted him of second degree murder on a theory of imputed malice.  (See *People v. Warner* (2025) 115 Cal.App.5th 416, 430 [affirming denial of section 1172.6 petition because "we are 'confident the jury *necessarily* found the [mental state and acts] required for direct aiding and abetting murder' "]; *People v. Lee* (2023) 95 Cal.App.5th 1164, 1191 ["in *Langi* . . . , the concern centered on the fact that the direct perpetrator of an implied malice murder . . . need not harbor an intent to kill" but "[t]hat concern is not present" under jury instructions which require the direct perpetrator to have " 'express malice aforethought, namely, a specific intent to kill' "].)

    2.    *The Jury Instructions on Attempted Murder Did Not Create a Possibility of Conviction on an Imputed Malice Theory*

Doby also argues that CALJIC No. 8.66 on attempted murder and CALJIC No. 8.66.1 on the "kill zone" theory allowed the jury to convict him of attempted murder on an imputed malice theory.

The People contend that Doby is ineligible for relief on this conviction because the jury was not instructed on the natural and

probable consequences doctrine.  The People argue section 1172.6 expressly limits relief to petitioners convicted of "attempted murder under the natural and probable consequences doctrine" and does not extend to attempted murder convictions under other theories of imputed malice.

Doby argues the People offer a "literal reading" of section 1172.6, but he further argues this creates "an 'absurd result' which is at odds with legislative intent and the entire statutory scheme."  Doby contends "there is no logical basis" for applying Senate Bill No. 1437's amendments to section 188 only to murder and not to attempted murder because criminal attempt is closely related to a completed crime, and because of the " ' "absurd and unfair situation where people are eligible for resentencing if the victim died, but are ineligible if the victim did not die." ' "

Every Court of Appeal to consider the issue has concluded that section 1172.6 "applies by its terms only to attempted murders based on the natural and probable consequences doctrine."  (*People v. Coley* (2022) 77 Cal.App.5th 539, 548; accord, *People v. Anaya* (2025) 117 Cal.App.5th 615, 619 (*Anaya*); *People v. Muhammad* (2024) 107 Cal.App.5th 268, 276; *People v. Rodriguez* (2024) 103 Cal.App.5th 451, 457; *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865 (*Lovejoy*).)  This is because the plain text of section 1172.6 expressly lists the bases for a resentencing petition.  Petitioners convicted of felony murder or murder may file a petition for resentencing if they were convicted "under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a).)  By contrast, a person convicted of attempted murder may only file a petition if convicted "under the natural and probable

15

consequences doctrine." (*Ibid.*) "Under governing principles of statutory construction, 'the expression of one thing in a statute ordinarily implies the exclusion of other things.' " (*People v. Guzman* (2005) 35 Cal.4th 577, 588.) By its terms, section 1172.6, subdivision (a), limits resentencing relief to defendants convicted of attempted murder under the natural and probable consequences doctrine.

Doby argues that "a literal reading of the statute without reference to the legislative history of SB 1437 and SB 775, and the entire statutory scheme regarding the imputation of malice leads to a result the Legislature could not have intended." But the " 'usual and ordinary' " meaning of the " 'statutory language is generally the most reliable indicator of [legislative] intent.' " (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1105.) "If the plain language of the statute is clear and unambiguous, our inquiry ends, and we need not embark on judicial construction. [Citations.] If the statutory language contains no ambiguity, the Legislature is presumed to have meant what it said, and the plain meaning of the statute governs." (*People v. Johnson* (2002) 28 Cal.4th 240, 244.)

Doby relies on *People v. Luu* (2025) 110 Cal.App.5th 1051 (*Luu*), review granted July 16, 2025, S291235, which concluded that section 1172.6 relief extends to attempted manslaughter even though "attempted manslaughter is not explicitly stated in the statute, [and] the completed crime of manslaughter *is* explicitly stated in the statute." (*Id.* at p. 1065.) *Luu* held that excluding attempted manslaughter from resentencing eligibility created an absurd result because it conflicted with "the intent of the Legislature in revising section 1172.6 . . . to include defendants convicted of attempted crimes obtained under the

natural and probable consequences doctrine." (*Id.* at p. 1066.)

Citing *Luu*, Doby argues that the Legislature intended to provide relief for those convicted of attempted murder on any theory of imputed malice because the amendments to section 188 (providing that " '[m]alice shall not be imputed to a person based solely on his or her participation in a crime' ") apply to both murder and attempted murder. Doby further argues that "the Legislature generally intends remedial legislation to apply to attempted crimes, even when the Legislature only mentions the completed crimes within the statute." But here, unlike attempted manslaughter, the Legislature expressly accounted for attempted murder, and it specifically limited relief to those convictions based on the natural and probable consequences doctrine.

In sum, we agree with the cases holding that the plain statutory text only permits a petitioner convicted of attempted murder to petition for resentencing based on the natural and probable consequences doctrine. Because the jury in Doby's case was not instructed on the natural and probable consequences doctrine, we conclude Doby is not eligible for resentencing relief based on his attempted murder conviction. (See *Lovejoy, supra,* 101 Cal.App.5th at p. 865 [section 1172.6 petition is "properly denied as to [an] attempted murder conviction only if the record affirmatively demonstrates the jury did not rely on the natural and probable consequences doctrine"]; *Anaya, supra,* 117 Cal.App.5th at p. 621 [affirming denial of petition where petitioner was convicted of attempted murder "not based on the

17

natural and probable consequences doctrine"].)[4]

## DISPOSITION

The judgment is affirmed.

MARTINEZ, P. J.

We concur:

FEUER, J.

STONE, J.

---

[4] Because we reject Doby's interpretation of section 1172.6, we need not reach Doby's remaining arguments as to his attempted murder conviction.

18